

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul Riley*  *Suite 400*  DIRECT: 410-209-4959
*Assistant United States Attorney*  *36 S. Charles Street*  MAIN: 410-209-4800
*Paul.Riley @usdoj.gov*  *Baltimore, MD 21201-3119*  FAX: 410-962-3091

August 13, 2021

<u>**VIA ECF**</u>

The Honorable Catherine C. Blake
United States District Judge
United States Courthouse
101 West Lombard Street
Baltimore, MD 21201

Re:   *United States v. Daniel Provencal*, Criminal No. CCB-21-0076
      *United States v. Daniel Provencal*, Criminal No. CCB-06-0440

Dear Judge Blake:

  The Government writes this letter in advance of the Defendant's sentencing in the above-referenced matters, which is scheduled for August 20, 2021.  On May 6, 2021, the Court accepted the Defendant's guilty plea to Count One of the Information charging the Defendant with Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  The Defendant also admitted that he is guilty of violating his supervised release conditions in criminal case number CCB-06-0440 (the "VOSR case") in the parties' plea agreement, and the parties expect that the Defendant will be sentenced in connection with the VOSR case on August 20, 2021 too.

  As set forth more fully below, the Government requests that the Court sentence the Defendant to a term of 126 months' imprisonment in CCB-21-76—the same term of imprisonment agreed upon by the Defendant in the parties' plea agreement—along with 12 months' imprisonment consecutive in connection with the VOSR case.

  **I.**  **Background**

  As detailed in the parties' plea agreement filed March 15, 2021 (ECF No. 5) and the Presentence Investigation Report (PSR) filed July 8, 2021 (ECF No. 12), beginning in January 2020 and continuing until October 2020, the Defendant possessed and repeatedly distributed child pornography on the social media provider Kik and used multiple electronic devices, including a Samsung Tablet, to download and distribute child pornography videos and images, including videos and images of prepubescent minors and videos and images that depicted sadomasochistic conduct.  And he did so while on federal supervised release at the time of the offense—having previously sustained a federal conviction for distribution of child pornography.[1]

---

  [1] On October 13, 2006, the Defendant was convicted of one count of Distribution of Child Pornography in the United States District Court for the District of Maryland, and on October 20,

By way of background, on or about January 24, 2020, Kik sent a CyberTip to the National Center for Missing and Exploited Children (NCMEC), which reported that a user with the identified Kik account username paperfly6—ultimately determined to be the Defendant—had uploaded 10 videos of possible child pornography, including a video of a prepubescent girl, approximately age 6 to 9 years old, whose vagina is being penetrated by an adult penis.

That CyberTip ultimately led to the execution of a search warrant at the Defendant's residence located at 203 Caroline Apartments, Denton, Maryland 21629 and the seizure of numerous electronic devices from the Defendant's bedroom.

After voluntarily waiving his *Miranda* rights, the Defendant spoke to investigators. He acknowledged, among other things, that child pornography was located on his devices and would be located by law enforcement. He further acknowledged that he was attracted to minors, though he said that they had to be high-school aged.

A forensic review of the Defendant's devices revealed that they each contained child pornography. In total, the devices contained at least 5,000 child pornography videos. In addition, at least one video depicts sadistic or masochistic conduct, namely a prepubescent girl bound and in bondage. The review likewise revealed that the Defendant repeatedly, on multiple devices, distributed child pornography images and videos to other users on Kik and engaged in explicit chats in which he discussed his sexual attraction to minors.

### II.   Guidelines Computation

Under the U.S. Sentencing Guidelines, the Defendant's offense level under the PSR as to Count One—Possession of Child Pornography—is correctly calculated at a total offense level of 30, after taking into account stipulated conduct and acceptance of responsibility. *See* PSR ¶¶ 36-50. The Defendant is a Criminal History Category IV. PSR ¶ 57. Thus, the applicable guideline imprisonment range is 135-168 months' imprisonment. PSR at 20.

A term of supervised release between 5 years and life is mandated by 18 U.S.C. § 3583(k), and, because the offense is a sex offense, the policy statement in U.S.S.G. § 5D1.2 recommends lifetime supervised release.

Regarding the VOSR case, the most serious grade of violation, Grade A, is applicable here, and the criminal history category applicable at the time the Defendant was originally sentenced to the term of supervision was I. Accordingly, pursuant to U.S.S.G. § 7B1.4, the term of imprisonment applicable under the guidelines upon revocation of supervised release is 12-18 months' imprisonment.

### III.   Sentencing Factors Under 18 U.S.C. § 3553(a)

The sentencing factors under 18 U.S.C. § 3553(a) support a sentence of 126 months' imprisonment, along with a consecutive sentence of 12 months' imprisonment in the VOSR case.

*First*, the serious nature and circumstances of the offense call for a sanction sufficient to reflect the Defendant's conduct. 18 U.S.C. § 3553(a)(1). The Defendant repeatedly viewed, distributed, and possessed child pornography involving victims ranging in age from infant to preteen—all while on federal supervised release after a past federal conviction for Distribution of

---

2006, the Court sentenced the Defendant to 63 months' imprisonment. This conviction arose out of the Defendant's distribution of child pornography on the online platform America Online.

Child Pornography. He acquired, viewed, and distributed horrific files of child pornography, including depictions of sado-masochistic conduct and of infants being sexually abused. A significant sentence of incarceration is warranted to reflect the nature and circumstances of the offense.

*Second*, the sentence imposed needs to reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The Government's recommended sentence will vindicate the interests of the victims who are depicted in the images that the Defendant used for his personal gratification and distributed.[2] This is particularly so, given that Defendant's sharing of child pornography with like-minded individuals serves both to "normalize" deviant behavior and encourage additional abuse of children.

As reported by the 2012 Sentencing Commission's Report to Congress,[3] many child pornography offenders use websites, chat rooms, and other interactive technologies dedicated to child pornography that allow direct communication with "like-minded peers." Such online communities, concluded the Commission, "'validate [offenders'] behavior" and 'provide encouragement' to continue offending." U.S. Sentencing Comm'n Report at 92-93.

*Third*, the Government's recommended sentence is necessary to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). This Defendant and others like him who search for, distribute, and view images and videos depicting the sexual abuse of children for their sexual gratification need to know that this type of conduct will be met with an appropriate sanction. This factor is generally of heightened concern given the documented high recidivism rates of sex offenders. *See United States v. McIlrath*, 512 F.3d 421, 424 (7th Cir. 2008) ("[T]he observed sexual recidivism rate [for all sex offenders] is typically 10% to 15% after five years." (quoting Karl Hanson & Kelly E. Morton-Bourgon, *The Characteristics of Persistent Sexual Offenders: A Meta-Analysis of Recidivism Studies*, 73 J. Counseling & Clinical Psych. 1154 (2005))).

In fact, while the recidivism rates among pedophiles are high, those rates likely underestimate the rate of recidivism. As pointed out by Ryan C. W. Hall & Richard C. W. Hall in the article entitled *A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues*, 82(4) Mayo Clin Proc. 457, 467 (Apr. 2007), the generally reported recidivism rates in the range of 10% to 50% (depending on grouping) "underestimate [the true] rate because many treatment studies do not include treatment dropout figures, cannot calculate the number of repeated offenses that are not reported, and do not use polygraphs to confirm self-reports."

---

[2] "As a general matter, the prohibition of child pornography derives from a legislative judgment that such materials are harmful to the physiological, emotional, and mental health of children, and that preventing the sexual exploitation of this uniquely vulnerable group 'constitutes a government objective of surpassing importance.'" *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014) (quoting *New York v. Ferber*, 458 U.S. 747, 757–58 (1982)). Because the material creates "a permanent record" of the abuse, the damage to child victims extends far beyond the abuse depicted and is "exacerbated by . . . circulation [of the material]." *Ferber*, 458 U.S. at 759. Furthermore, distribution of the material not only prolongs the damage to the children depicted but also generates demand and drives the production of new material, which imposes the same continuing injuries to new child victims.

[3] U.S. Sentencing Comm'n, Federal Child Pornography Offenses xvii (2012), *available at* http://www.ussc.gov/sites/default/files/pdf/news/congressional–testimony–and-reports/sex–offense–topics/201212–federal–childpornography–offenses/Full_Report_to_ Congress.pdf.

Defendant may claim that he is not in fact a pedophile. But the child pornography on his devices, which included depictions of prepubescent children being raped, suggests otherwise. "An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, *Child Molesters: A Behavioral Analysis For Professionals Investigating The Sexual Exploitation Of Children*, 107 (5th Ed. 2010).

*Fourth*, the sentence needs to protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a)(2)(C). Indeed, this is particularly so here given that Defendant is a recidivist—committing the offense after having previously served the 63 month sentence imposed by the Court for Distribution of Child Pornography.

*Fifth*, the types of sentences available for the offense of which the Defendant has been convicted also justify the sentence the Government seeks. 18 U.S.C. §§ 3553(a)(3), (4)(A)(i). Count One carries a sentence with a mandatory minimum term of imprisonment of 10 years and a statutory maximum of 20 years' imprisonment. Further, as noted above, the guidelines range is 135-168 months' imprisonment. (Were the Defendant convicted of Distribution of Child Pornography, he would have faced a mandatory minimum sentence of 15 years' imprisonment.)

*Sixth*, the Defendant's history and characteristics—and particularly his criminal history involving child pornography offenses—militate in favor of the Government's recommended sentence. Again, the Defendant was previously convicted and on October 20, 2006 sentenced by the Court for Distribution of Child Pornography and served a 63 month sentence. PSR ¶ 53. On October 1, 2013, the Defendant was convicted of a violation of a release condition and sentenced to 6 months' incarceration. *Id.* And, after his release from federal custody, he was on September 30, 2014 convicted in Caroline County for two counts of Possession of Child Pornography and sentenced to 2 years' imprisonment as to one count and 4 years' consecutive as to the other count. PSR ¶ 54. The Defendant thus has displayed a troubling pattern of breaking both state and federal child pornography laws. A significant sentence is therefore necessary to ensure that the Defendant does not simply return to the same criminal activity, just as he did following every other encounter he had with the criminal justice system before this one.

The Defendant's childhood, which was undoubtedly very difficult based on the PSR, perhaps provides some explanation for the Defendant's criminal history. But it certainly does not excuse it. While the offense conduct here and Defendant's criminal history might ordinarily justify a higher sentence, consistent with the parties' plea agreement and factoring in Defendant's difficult early life, the Government recommends a sentence below the applicable guidelines range as to Count One—as agreed upon by the parties—and a sentence at the low end of the guidelines in connection with the VOSR case. Thus, the total sentence recommended by the Government is 138 months' imprisonment, which is just three months above the bottom of the guidelines range for Count One, not even taking into account the guidelines for the VOSR case.

*Finally*, the Government respectfully requests that the Court impose all of the conditions of supervision (including special conditions) recommended in the PSR and explain why the conditions are warranted. *See United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020) (citations omitted) (noting that "a sentencing court's duty to provide an explanation for the sentence imposed also requires that the court explain any special conditions of supervised release.") (vacating portion of district court's imposition of lifetime supervised release and certain special conditions in light of court's failure to explain their applicability).

Here, the proposed conditions of supervised release are reasonable in light of the background and circumstances of this case and are no more restrictive than necessary to serve the purposes of sentencing.  *See* 18 U.S.C. § 3583(d).

Regarding the condition concerning computer monitoring software and unannounced searches of any computer (Special Condition 1 and 2), these conditions are warranted in light of the Defendant's repeated use of computers and computer programs (both in connection with his past federal conviction and the instant offense) to view, distribute, and possess child pornography.  Further, they are directly related to the Defendant's rehabilitation (by ensuring that he does not use the Internet or computers inappropriately once again) and the protection of the public (by preventing him from using the Internet and computers, online programs, to once again distribute child pornography).  These restrictions are also consistent with U.S.S.G. § 5D1.3(d)(7)(B), which recommends imposition of computer use restrictions in sex offense cases in which a computer was used.

Regarding the condition concerning contact with minors (Special Conditions 4 and 7), given the Defendant's sexual interest in children such a limitation is prudent and certainly warranted here.  If Defendant finds that he needs to have any such contact, the Probation Officer can grant him permission, including with whatever limitations are appropriate, such as supervision of such contact, and/or notification of custodial adults.

Regarding the condition on Defendant's access to pornography (Special Conditions 5 and 6), this condition is warranted too.  Reason dictates that a sex offender who has exposure to pornography is engaging in "fantasy sex," which may lead to high-risk behavior.  He or she also is not addressing his or her intimacy deficits appropriately.  Studies have cited intimacy deficits as a well-researched stable risk factor for sexual recidivism.  *See* K. Hanson, *Risk Assessment, Association for the Treatment of Sexual Abusers*, January 2000.

### IV.   The Government's Sentencing Recommendation

In light of all of the factors set forth above, the Government recommends that the Court sentence the Defendant to a term of 126 months' imprisonment, along with a consecutive sentence of 12 months' imprisonment in the VOSR case—to be followed by lifetime supervised release.  Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing under the Section 3553(a) factors.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

        /s/
By:   Paul A. Riley
Assistant United States Attorney

cc:    Defendant's Counsel (by ECF)
       Helen Domico, U.S. Probation Officer (by electronic mail)